AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means      AUSA Delaviz

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:24-mj-81
Four electronic devices described in Attachment A )
)
)

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the     Southern     District of     Ohio    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to distribute & possess with intent to distribute controlled substance; |
| 21 U.S.C. 841(a)(1) | Distribution of & possession with intent to distribute controlled substance; Use of |
| 21 U.S.C. 843(b) | communication facility in facilitating the commission of felony |

The application is based on these facts:
As set forth in the attached Affidavit of U.S. Postal Inspector Justin D. Koble

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Justin D. Koble*
*Applicant's signature*

Justin D. Koble / U.S. Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: Feb. 14, 2024

City and state: Columbus, OH

Kimberly A. Jolson
United States Magistrate Judge

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>Four electronic devices described in Attachment A | CASE NO. __2:24-mj-81__<br><br> Filed Under Seal |

### AFFIDAVIT IN SUPPORT OF

### AN APPLICATION FOR A SEARCH WARRANT

I, Justin D. Koble, Postal Inspector with the United States Postal Inspection Service (USPIS), being duly sworn, hereby depose and state as follows:

### EDUCATION, TRAINING, AND EXPERIENCE

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the search of one black Samsung phone (model number SM-A115U, IMEI: 355357116931531, S/N: R95N8057HMW), one silver Samsung phone (additional device identifier are not immediately available), one Amazon Kindle (model K72LL4), and one Amazon Kindle (model L5S83A), all belonging to Jose Ruben Leyva (LEYVA), hereinafter referred to as the SUBJECT DEVICES.  The SUBJECT DEVICES are currently located in Columbus, Ohio, in the Southern District of Ohio, Eastern Division and are in the custody of the United Stats Postal Inspection Service.

2. I am a United States Postal Inspector with the United States Postal Inspection Service (USPIS) and have been so employed since July 2014.  I am currently assigned to the Narcotics and Money Laundering Team at the USPIS's Columbus, Ohio field office.  In this capacity, I am responsible for investigating the illegal use of the United States Mails for the purpose of transporting controlled substances such as methamphetamine, heroin, fentanyl, fentanyl-related analogs, cocaine, and other controlled substances, in violation of, among other statutes, Title 21, United States Code, § 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a controlled

substance), 843(b) (unlawful use of a communication facility in the commission of a crime), and 846 (drug conspiracy). In addition, I am responsible for investigating possible violations of Title 18, United States Code, § 1956 and 1957 (money laundering).

3. I have been involved in the investigation and discovery of drug contraband and drug proceeds on numerous occasions. I have personally been the affiant for search warrants that have resulted in the discovery of controlled substances and drug proceeds. My current assignment to the Columbus Processing and Distribution Center (P&DC) involves investigating the use of the U.S. Mails by drug traffickers, in which established drug package profiles, surveillance, and drug detection dogs, among other investigative tools, are utilized.

## PURPOSE OF THE AFFIDAVIT

4. The facts set forth below are based upon my own personal observations, investigative reports, and information provided to me by other law enforcement agents. I have not included in this affidavit all information known by me relating to the investigation. I have not withheld any evidence or information which I believe would negate probable cause. I have set forth only the facts necessary to establish probable cause for a search warrant for the contents of the SUBJECT DEVICES which were seized from LEYVA's residence during his arrest for conspiracy to distribute and possession with intent to distribute fentanyl.

5. The SUBJECT DEVICES to be searched are more particularly described in Attachment A. The items to be searched for are described in particularity in Attachment B. The items to be searched for constitute instrumentalities, fruits, and evidence of violations of 21 U.S.C. § 846, conspiracy to distribute and possession with intent to distribute controlled substances, including methamphetamine, heroin and fentanyl, 21 U.S.C. § 841(a)(1), distribution of and possession with intent to distribute a controlled substance, including methamphetamine, heroin and fentanyl, and 21 U.S.C. § 843(b), use of a communication facility in facilitating the commission of felonies under the Controlled Substances Act.

## INVESTIGATION AND PROBABLE CAUSE

6. In 2023, the United States Postal Inspection Service (USPIS), Columbus, Ohio, along with Central Ohio HIDTA Task Force Officers in Grove City, Ohio, conducted a narcotics trafficking investigation into a drug trafficking organization (DTO) operating in and around Columbus, Ohio. Investigators knew this DTO was engaged in a large-scale conspiracy involving narcotics distribution utilizing the United States Postal Service (USPS) and other carriers for the shipment of large quantities of controlled substances, including methamphetamine and fentanyl, from Arizona to various addresses in central Ohio.

7. Through the ongoing investigation, investigators identified, among other individuals, Jose Ruben LEYVA (LEYVA), as being associated with this DTO.

8. Between June and October 2023, LEYVA was observed on multiple occasions, to be the mailer of USPS parcels suspected and confirmed to contain controlled substances, specifically fentanyl (both powder and M-30 pills) and methamphetamine from Arizona. The parcels were sent to various addresses throughout the United States including addresses in Columbus, Ohio. Based on my training and experience and my knowledge of the investigation, including a review of USPS records, I believe that there is evidence that LEYVA and the individuals with whom he was working likely mailed packages containing controlled substances to the Columbus, Ohio area as early as November 22, 2022.

9. On July 12, 2023, video surveillance the Northwest Station Post Office, Phoenix, AZ 85017, captured a heavy-set Hispanic male with a long grey/white beard, later identified as LEYVA, mailing a USPS Priority Mail Express parcel to Columbus, Ohio. This parcel was interdicted and searched pursuant to a federal search warrant issued in the Southern District of Ohio. This parcel was found to contain approximately 2,350 grams of suspected methamphetamine.

10. Following the seizure of this parcel, US Postal Inspectors conducted a review of USPS business records, specifically checks of Internet Protocol (IP) addresses associated with the tracking of this parcel. Investigators learned an IP address registered to the internet service provider T-Mobile had been used to track this parcel. Additionally, the same IP address had been used to track a USPS parcel

delivered to 8043 North 29th Drive, Phoenix, Arizona 85051. Investigators identified LEYVA as a resident of this address. An Arizona driver's license photo of LEYVA was obtained and compared to surveillance video showing the July 12, 2023, mailing of the USPS parcel found to contain suspected methamphetamine.

11. On September 18, 2023, video surveillance from the Washington Station Post Office, Phoenix, AZ 85021, captured LEYVA mailing a USPS Priority Mail Express parcel to an address in Donalsonville, Georgia. This parcel was interdicted and searched pursuant to a federal search warrant issued in the District of Arizona. This parcel was found to contain approximately 217 grams of blue counterfeit M-30 pills, suspected to contain fentanyl.

12. On September 20, 2023, video surveillance from the Northwest Station Post Office, Phoenix, Arizona, 85017, captured LEYVA mailing a USPS Priority Mail Express parcel to an address in Dallas, North Carolina. This parcel was interdicted and searched pursuant to a federal search warrant issued in the District of Arizona. This parcel was found to contain approximately 1,335 grams of methamphetamine.

13. On October 11, 2023, video surveillance from the Glendale Downtown Post Office, Glendale, Arizona 85301, captured LEYVA mailing a USPS Priority Mail Express parcel to an address in Columbus, Ohio which had been previously identified by investigators. This parcel was interdicted and searched pursuant to a federal search warrant issued in the Southern District of Ohio. This parcel was found to contain approximately 512 grams of fentanyl.

14. On October 12, 2023, video surveillance from the Maryvale Post Office, Phoenix, Arizona 85031, captured LEYVA mailing a USPS Priority Mail Express parcel to a second previously identified address in Columbus, Ohio. This parcel was interdicted and used as part of a controlled delivery operation. On or about October 13, 2023, this parcel was delivered to the destination address. Shortly thereafter, a previously obtained federal search warrant, issued in the Southern District of Ohio, was executed at the delivery address. The parcel was found to have been opened and was determined to contain approximately 500 grams of suspected fentanyl.

15. During the investigation, investigators were able to identify 8043 North 29th Drive in Phoenix, Arizona as LEYVA's suspected residence. Investigators used various tools, including a GPS tracker on LEYVA's vehicle, as well as registration information for LEYVA's vehicle, to identify LEVYA's residence.

16. On or about October 18, 2023, a federal criminal complaint and arrest warrant was issued for LEYVA in the Southern District of Ohio. The same day, a state search warrant for LEYVA's residence, 8043 North 29th Drive, Phoenix, Arizona 85051, was executed. LEYVA was present at the home with his family, and he was taken into custody. During a search of LEYVA's residence, multiple pieces of evidence reflecting drug trafficking were recovered, including firearms, methamphetamine, fentanyl, heroin, packaging material and mailing labels consistent with the previously described seized parcels, and the SUBJECT DEVICES.

17. On or about November 9, 2023, LEYVA was indicted by a grand jury in the Southern District of Ohio, under case number 2:23cr226, on one count of conspiracy to distribute and possess with intent to distribute fentanyl in violation of Title 21 United States Code §§ 846, 841(a)(1), and 841(b)(1)(A)(vi). Another individual, Ontario M. Yarbrough, was also named in the same indictment and charged with the same offense, as well as other offenses.

18. Based on my training and experience, I understand that drug traffickers often use cellular telephones and electronic devices connected to the internet to facilitate their drug trafficking activity. Based on my training and experience and my knowledge of this investigation, I believe that the drug traffickers in this investigation used cellular telephones and electronic devices connected to the internet to facilitate the drug trafficking activities that this investigation uncovered. For example, this investigation has revealed dozens of packages coming from Arizona to the Columbus area. Some of those packages, including the aforementioned July 12, 2023 package containing 2,350 grams of methamphetamine, were mailed to an individual, L.M., known to investigators. Other packages were mailed to the aforementioned Yarbrough. Investigators currently are not aware of a connection between L.M. and O.Y. I believe that LEYVA and the organization with whom he is working has somehow publicized and communicated with

drug traffickers to make it known that LEYVA and his organization has drugs that it is able to mail. Furthermore, on September 12, 2023, surveillance video from the South Mountain Station Post Office, Phoenix, Arizona 85042, captured images on an unknown white or Hispanic male mailing a USPS Priority Mail Express parcel to an address known to be associated with this investigation. During the October 18, 2023, search of LEYVA's residence, despite the fact that that LEYVA hadn't himself mailed the September 12, 2023, parcel, a receipt for the mailing of this parcel was recovered. Based on this evidence, your affiant believes LEYVA was communicating and working with other individuals, known and unknown, to facilitate the transportation of bulk narcotics from Arizona to Columbus, Ohio and other states via the USPS. Lastly, during the controlled delivery on October 13, 2023, of the parcel that LEYVA had mailed on October 12, 2023, Yarbrough came out of the home seconds after the parcel was delivered on the porch, and he took the package inside. Minutes later, when the search warrant was executed at the home, the parcel was already opened. This investigation has revealed that for other deliveries of parcels, Yarbrough has retrieved the parcel very soon after it was delivered and has also suggested that Yarbrough was tracking packages after they were mailed from Arizona. Based on my training and experience and my knowledge of the investigation, including the aforementioned evidence, I believe that LEYVA and the individuals with whom he is working are communicating with each other via cellular telephones and electronic devices connected to the internet and with individuals to whom they are mailing the parcels containing the controlled substances via cellular telephones and electronic devices connected to the internet.

19. I am also aware that drug traffickers, in using cellular telephones and electronic devices connected to the internet, often use applications, or "apps," on those devices, to communicate with other individuals.

20. Based upon the above information and your affiant's knowledge that phones and other electronic devices are routinely used to plan, coordinate, track narcotics shipments, and facilitate narcotics transactions, your affiant believes that there is probable cause that the SUBJECT DEVICES contain additional evidence of the crimes charged in the above referenced indictment.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media

include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When

    a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

    g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address consists of one of two formats, a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178) or a series of 24 alphanumeric characters broken down into blocks of four characters and separated by a colon. Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.samsung.com, I know that the Samsung Phones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device and PDA. Additionally, I know the Amazon Kindle tablets have capabilities that allow them to serve as a portable media player and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution*. Because this warrant seeks only permission to examine the SUBJECT DEVICES, already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## AUTHORIZATION REQUEST

27. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_Justin D. Koble_

Justin D. Koble

United States Postal Inspector

Subscribed and sworn to before me on this 14th day of February, 2024

_____
Kimberly A. Jolson
United States Magistrate Judge

# ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is:

1. one black Samsung phone (model SM-A115U, IMEI: 355357116931531, S/N: R95N8057HMW);

2. one silver Samsung phone (additional device identifiers are not immediately available);

3. one Amazon Kindle (model K72LL4); and

4. one Amazon Kindle (model L5S83A)

The aforementioned devices are currently located in Columbus, Ohio, in the Southern District of Ohio, Eastern Division and are in the custody of the United Stats Postal Inspection Service.

This warrant authorizes the forensic examinations of the aforementioned devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**PARTICULAR THINGS TO BE SEARCHED FOR AND SEIZED**

1. All records on the four devices described in Attachment A that relate to violations of 21 U.S.C. § 846, conspiracy to distribute and possession with intent to distribute controlled substances, including methamphetamine, heroin and fentanyl, 21 U.S.C. § 841(a)(1), distribution of and possession with intent to distribute a controlled substance, including methamphetamine, heroin and fentanyl, and 21 U.S.C. § 843(b), use of a communication facility in facilitating the commission of felonies under the Controlled Substances Act and involve Jose R. Leyva since September 1, 2022, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording Leyva's schedule or travel from September 1, 2022, to the present;

   e. any information recording Ontario Yarbrough's or L.M.'s schedule or travel from September 1, 2022, to the present;

   f. all records and information relating to the shipment of controlled substances using the U.S. Postal Service, or using any private courier, such as FedEx or U.P.S.;

    g. all records and information relating to the tracking of U.S. Postal Service shipments or shipments by any private courier, such as FedEx or U.P.S.;

    h. all records and information relating to payment for controlled substances;

    i. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the four devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, investigators with the USPIS or Central Ohio HIDTA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.